DATED April 22, 2002.

Dwight M. Whitley, Jr.

Hearing Officer 9I

The **PEOPLE** of the State of Colorado, Complainant,

v.

Kirk Patrick **DOUGHERTY**, Respondent.

No. 02PDJ105.

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

Aug. 25, 2003.

**REPORT, DECISION AND IMPOSITION OF SANCTION**

*SANCTION IMPOSED: ATTORNEY DISBARRED*

A sanctions hearing pursuant to C.R.C.P. 251.18(d) was held on June 17, 2003, before the Hearing Board consisting of the Presiding Disciplinary Judge ("PDJ") and two hearing board members, Victoria J. Koury and Barbara Weil Laff both members of the bar. Kim E. Ikeler, Assistant Attorney Regulation Counsel, represented the People of the State of Colorado ("People"). The respondent, Kirk P. Dougherty ("Dougherty") did not appear in person or by counsel.

The People filed a Complaint in this matter on December 10, 2002. The Citation and Complaint were sent via certified mail to Dougherty's registered business and last known home address on the same date. The certified mail envelope was returned to the Office of Attorney Regulation Counsel marked "moved, left no address." The documents were also sent via regular mail and were not returned. Dougherty did not accept service and did not file an Answer. Service is therefore proper pursuant to C.R.C.P. 251.32(b).

Upon the People's Motion, the PDJ entered default on March 6, 2003, deeming the facts set forth in the Complaint admitted, and establishing violations of the rules set forth therein, except for claims 12, 14, and 27, which were dismissed.

At the sanctions hearing, the People offered statements from three complaining witnesses Charlene Walker, Christie Brysacz and Marcus Foster regarding the appropriate sanction:. *See* C.R.C.P. 251.18(a). Dougherty did not appear at the hearing in person or through counsel. The Hearing Board considered the People's argument and made the following findings of fact which were established by clear and convincing evidence.

## I. FINDINGS OF FACT

Dougherty has taken and subscribed to the oath of admission, was admitted to the bar of the Colorado Supreme Court on May 4, 1994, and is registered upon the official records of

Opinion by Presiding Disciplinary Judge, ROGER L. KEITHLEY, and Hearing Board Members VICTORIA J. KOURY and BARBARA WEIL LAFF, both members of the Bar.

the Supreme Court, registration number 23964. He is subject to the jurisdiction of this Court pursuant to C.R.C.P. 251.1(b).

The entry of default deemed the facts set forth in the Complaint admitted and established violations of the Rules of Professional Conduct set forth therein. The facts and rule violations are therefore established by clear and convincing evidence. *See* Complaint attached hereto as Exhibit "A."

## II. CONCLUSIONS OF LAW AND IMPOSITION OF SANCTION

The facts giving rise to this proceeding involved eleven different clients. The following claims are deemed established by the entry of default: claim one, Colo. RPC 1.4(b) (an attorney shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation); claim two, Colo. RPC 1.1 (an attorney shall provide competent representation to a client); claim three, Colo. RPC 1.3(an attorney shall not neglect a legal matter entrusted to that attorney); claim four Colo. RPC 1.3; claim five, Colo. RPC 1.4(a) (an attorney shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information); claim six, Colo. RPC 1.1; claim seven, Colo. RPC 8.4(c) (it is professional misconduct for an attorney to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); claim eight, Colo. RPC 1.16(d) (an attorney shall, upon termination of representation, take steps to protect a client's interests, including giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of any fee not earned); claim nine, Colo. RPC 1.16(d); claim ten, Colo. RPC 1.1; claim eleven, Colo. RPC 1.4(a) and Colo. RPC 1.4(b); claim thirteen, Colo. RPC 1.4(a); claim fifteen, Colo. RPC 8.4(c); claim sixteen, Colo. RPC 1.16(d); claim seventeen, Colo. RPC 1.3; claim eighteen, Colo. RPC 1.4(a); claim nineteen, Colo. RPC 8.4(c); claim twenty, Colo. RPC 1.3; claim twenty-one, Colo. RPC 1.4(a); claim twenty-two, Colo. RPC 8.4(h) (it is professional misconduct for an attorney to engage in any other conduct that reflects adversely on the attorney's fitness to practice law) and Colo. RPC 1.7(b) (it is professional misconduct for an attorney to engage in any other conduct that reflects adversely on the attorney's fitness to practice law); claim twenty-three, Colo. RPC 1.1; claim twenty-four, Colo. RPC 8.4(c); claim twenty-five, Colo. RPC 3.4(c) (the prosecutor in a criminal case shall not seek to obtain from an unrepresented accused a waiver of important pretrial rights); claim twenty-six, Colo. RPC 8.4(c); claim twenty-eight, Colo. RPC 1.3; Claim twenty-nine Colo. RPC 1.4(a); claim thirty, Colo. RPC 8.4(h) and Colo. RPC 1.7(b)(it is professional misconduct for an attorney to engage in any other conduct that reflects adversely on the attorney's fitness to practice law); claim thirty-one Colo. RPC 8.1(b) (an attorney in connection with a disciplinary or reinstatement matter shall not knowingly fail to respond reasonably to a lawful demand for information from an admission or disciplinary authority);, and claim thirty-two, Colo. RPC 3.4(c).

◼ In his representation of five of the eleven clients giving rise to this proceeding—Stewart, Foster, Moore, Gamet, and Abundis—Dougherty knowingly exercised unauthorized dominion and control over the clients' funds by accepting funds from the clients in payment for his services, failing to perform those services, and then failing to return the funds to the clients in violation of Colo. RPC 8.4(c)(it is professional misconduct for a lawyer to engage in conduct involving dishonesty, deceit, fraud or misrepresentation). His failing to return the funds over an extended period of time constitutes conversion. *People v. Varallo*, 913 P.2d 1, 11 (Colo. 1996).

◼ In *Varallo, supra*, 913 P.2d at 11, the Colorado Supreme Court stated:

Knowing misappropriation [for which the lawyer is almost invariably disbarred] "consists simply of a lawyer taking a client's money entrusted to him, knowing that it is the client's money and knowing that the client has not authorized the taking." *In re Noonan*, 102 N.J. 157, 160, 506 A.2d 722 (1986). Misappropriation in-

cludes "not only stealing, but also unauthorized temporary use for the lawyer's own purpose, whether or not he derives any personal gain or benefit therefrom." *In re Wilson*, 81 N.J. 451, 455 n. 1, 409 A.2d 1153 (1979). The motive of the lawyer is irrelevant in determining the appropriate discipline for knowing misappropriation. Moreover, "[i]ntent to deprive permanently a client of misappropriated funds, however, is not an element of knowing misappropriation." *In re Barlow*, 140 N.J. 191, 657 A.2d 1197, 1201 (1995).

The ABA *Standards for Imposing Lawyer Sanctions* (1991 and Supp.1992) ("ABA *Standards* ") are the guiding authority for selecting the appropriate sanction to oppose for lawyer misconduct. *In re Roose*, 69 P.3d 43, 47 (Colo.2003), *modified, reh'g denied.* ABA *Standard* § 4.11 provides that "[d]isbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client." Dougherty's knowing conversion of client funds meets the criteria for disbarment under ABA *Standard* § 4.11.

In addition to engaging in five instances of knowing conversion, Dougherty's conduct constituted: six violations of Colo. RPC 1.4(a)(the Zinna, Brackeen, Marschel, Foster, Auckly and Abundis matters); two violations of Colo. RPC 1.4(b)(the Brysacz and Brackeen matters); four violations of Colo. RPC 1.1 (the Brysacz, Zinna, Brackeen, Gamet matters); five violations of Colo. RPC 1.3 (the Birchfield, Zinna, Foster, Auckley, Abundis matters); four violations of Colo. RPC 1.16(d)(the Stewart, Brackeen, Marschel and Foster matters); two violations of 1.7(b)(the Gamet and Abundis matters); two violations of Colo. RPC 3.4(c)(the Gamet matter and failing to respond to the Office of Attorney Regulation Counsel), one violation of Colo. RPC 8.4(h)(the Gamet Matter) and one violation of Colo. RPC 8.1(b).

■ Dougherty violated Colo. RPC 1.3(a lawyer shall act with reasonable diligence in representing a client and shall not neglect a legal matter entrusted to that lawyer) by neglecting four client matters: Zinna, Foster, Auckly and Abundis. Dougherty violated Colo. RPC 1.4(a) in the Zinna, Brackeen,

Marschel, Foster, Auckly and Abundis matters by failing to keep the clients reasonably informed about the status of a matter and promptly complying with reasonable requests for information. He violated Colo. RPC 1.4(b) in the Brysacz and Brackeen matters by failing to explain matters to the extent reasonably necessary to permit his clients to make informed decisions about the representation. The extent of Dougherty's lack of communication and neglect of his clients' matters warrants an extended period of suspension or disbarment. *See* ABA *Standard* § 4.41(b)(stating that disbarment is generally appropriate when a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client) and ABA *Standard* § 4.41(c)(stating that disbarment is generally appropriate when a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client). *See also People v. Murray*, 887 P.2d 1016, 1021 (Colo.1994) (lawyer disbarred for knowingly failing to perform services for clients in ten separate matters constituting a pattern of neglect and causing potentially serious harm to clients); *People v. Dulaney*, 785 P.2d 1302, 1306 (Colo.1990) (lawyer disbarred for chronic neglect of client matters and use of deceit to cover the neglect).

■ In three cases—Stewart, Brackeen, and Foster—the extent of Dougherty's neglect rose to the level of abandonment. With regard to each of these three clients, Dougherty failed to allow time for employment of other counsel, failed to surrender papers and/or failed to return the client's retainer in violation of Colo. RPC 1.16(d)(upon termination of representation, a lawyer shall take reasonably steps to protect the client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned). To find abandonment rather than merely neglect, there must be proof that the attorney—during a given time period—was required to accomplish specific professional tasks for the client, failed to accomplish those tasks, and failed to communicate with the

client. The proof must objectively indicate that the attorney has deserted, rejected and/or relinquished the professional responsibilities owed to the client. The totality of facts establish that Dougherty deserted, rejected and/or relinquished the professional responsibilities owed to these clients and thereby abandoned them. Abandonment of numerous clients warrants disbarment. *People v. Townshend*, 933 P.2d 1327, 1329 (Colo. 1997) (lawyer disbarred who effectively abandoned two clients after accepting retainers and failing to account for or return the unearned retainers). *See generally* ABA *Standards* § 4.11 and § 4.41.

Dougherty violated Colo. RPC 3.4(c)(a lawyer shall not knowingly disobey an obligation under the rules of a tribunal) by knowingly disobeying the Supreme Court's Order immediately suspending him from the practice of law, by endeavoring to continue to represent one client, Gamet, after that order of immediate suspension had entered, and after he knew of the suspension.

Dougherty violated Colo. RPC 1.1 (an attorney shall provide competent representation to a client) by failing to provide competent legal representation to his clients Gamet and Brysacz in their criminal matters as well as Zinna and Brackeen, demonstrating a lack of understanding of basic legal procedures, a failure to undertake basic preparation necessary for the representation, and a lack of understanding of his appropriate role as an attorney.

Dougherty also violated Colo. RPC 1.7(b) and 8.4(h) by proposing or engaging in sexual relations with clients. Additionally, he failed to cooperate with the Office of Attorney Regulation Counsel during its investigation in violation of Colo. RPC 8.1(b).

Dougherty's actions resulted in serious injury or potentially serious injury to a number of his clients: Dougherty's conduct contributed to a delay in closing the sale of Zinna's residence, with a resulting increase in costs to Zinna, who was required to obtain new counsel to resolve outstanding problems and had to pay additional costs on a vehicle lease. Foster was required to pay additional costs for replacement counsel; Auckly paid additional amounts in additional child support;

Brysacz pled guilty to charges, suffered substantial penalties thereby, and her mother was forced to close her day-care business; after having been found in contempt, Brackeen lost her job and her house; Marschel's efforts to obtain custody of her child were delayed, and Abundis and her husband were delayed in resolving a child support matter.

Pursuant to ABA *Standard* 9.22, the Hearing Board considered aggravating factors in arriving at the appropriate sanction. Dougherty did not appear or present evidence, so no mitigating factors were considered. The facts established by default established several aggravating factors pursuant to ABA *Standards* 9.22. Dougherty had a dishonest or selfish motive, *see id.* at 9.22(b); he exhibited a pattern of misconduct, *see id.* at 9.22(c) and engaged in multiple offenses; *see id.* at (d). Dougherty has not acknowledged the wrongful nature of his conduct, *see id. at* 9.22(g). Many of Dougherty's victims were vulnerable, *see id.* at 9.22(h). Finally, Dougherty has made no effort to provide restitution to his former clients, *see id.* 9.22(j).

■ Dougherty's knowing misappropriation of client funds, standing alone, is sufficient to warrant disbarment. The additional rule violations including neglect, failure to communicate, abandonment of clients, disobedience of a court order, incompetence, his endeavors to engage in, and engaging in, inappropriate relationships with clients, and his failure to cooperate in the investigation of his disciplinary violations, confirm that disbarment is warranted. *See Murray, supra, Dulaney, supra.*

### III. *ORDER*

It is therefore Ordered:

1. KIRK PATRICK DOUGHERTY, attorney registration number 23964, is DISBARRED from the practice of law effective thirty-one days from the date of this order.

2. Dougherty is ordered to pay the costs of these proceedings; the people shall submit a statement of costs within ten (10) from the date of this Order. Respondent shall have

five (5) days thereafter to submit a response thereto.

## EXHIBIT A

Kim E. Ikeler, # 15590, Assistant Regulation Counsel, John S. Gleason, # 15011, Regulation Counsel, Attorneys for Complainant, 600 17th Street, Suite 200–South, Denver, Colorado 80202.

## COURT USE ONLY

## COMPLAINT

THIS COMPLAINT is filed pursuant to the authority of C.R.C.P. 251 .9 through 251.14, and it is alleged as follows:

### Jurisdiction

1. The respondent has taken and subscribed the oath of admission, was admitted to the bar of this court on May 4, 1994, and is registered upon the official records of this court, registration no. 23964. He is subject to the jurisdiction of this court in these disciplinary proceedings. The respondent's registered business address is 3773 Cherry Creek North Drive, Suite 575, Denver, Colorado 80209.

### General Allegations
### THE KRISTI BRYSACZ MATTER

2. Kristi Brysacz is in her mid-twenties. Respondent represented Ms. Brysacz with regard to child abuse charges brought against her.

3. Ms. Brysacz was charged with having abused a child while working for her mother's day-care business. Ms. Brysacz believed she was innocent and wanted to take the matter to trial.

4. It was important to Ms. Brysacz and her mother that Ms. Brysacz be acquitted. The mother conducted a day-care business in her home and Ms. Brysacz lived with her mother. If Ms. Brysacz were convicted of child abuse, her mother would be faced with a choice of either forcing her daughter to move out or shutting down her day-care business. The regulators would not permit the mother to care for children in her home if a convicted child abuser was living there.

5. Ms. Brysacz and her mother discussed this many times with respondent. Respondent knew that the mother was not only a daycare provider but the President of the Arapahoe County Child Care Association. Respondent understood that Ms. Brysacz's and her mother's livelihood was on the line and that it was vital to prove Ms. Brysacz's innocence.

6. On the day of trial, the mother was scheduled for surgery. The mother felt that her daughter was in good hands with respondent because he knew the importance of preserving their jobs.

7. However, when Ms. Brysacz met respondent on the morning of trial, he convinced her to plead guilty. He told her that if she would plead guilty, she would get a suspended sentence, have to go to one anger management class, and be on probation for one year. He said her fine would be under $100 and at the end of the year the conviction would be wiped from her file.

8. Respondent knew it was likely that, if Ms. Brysacz pled guilty, her mother would be required to close her day-care business. Notwithstanding this substantial risk, respondent convinced Ms. Brysacz that it wouldn't happen and that her mother was just overreacting and being paranoid. Respondent told Ms. Brysacz that her mother was ill and having surgery and that she was under a lot of stress. Respondent told Ms. Brysacz that if she pled guilty and the day-care regulators did in fact want to shut down the mother's day-care business because Ms. Brysacz was living at home, then Ms. Brysacz could move in with him.

9. Ms. Brysacz trusted respondent and pled guilty. After she pled guilty she was told she would have to pay a fine of over $1,000, attend six months of anger management classes costing $25 per class, and be on probation for 2 years. In addition, as a result of Ms. Brysacz's guilty plea, the mother had to close her day-care business.

## Claim I

**(A Lawyer Shall Explain A Matter To The Extent Reasonably Necessary To Permit The Client To Make Informed Decisions Regarding The Representation–Colo. RPC 1.4(b))**

10. Paragraphs 2 through 9 are incorporated herein as if fully set forth.

11. Colo. RPC 1.4(b) provides that a lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

12. The respondent failed to explain to Ms. Brysacz the full extent of the possible legal consequences of her pleading guilty to child abuse. In addition, respondent failed to fully explore with Ms. Brysacz the practical consequences of her pleading guilty, including the possibility that Ms. Brysacz's mother would have to close her day-care business. Each of these failures to explain constitutes a separate violation of Colo. RPC 1.4(b) as do both of them together.

13. The respondent knew or should have known that he failed to adequately explain the legal matter to the client. Respondent's failing to explain to Ms. Brysacz the consequences of her pleading guilty to child abuse caused serious or potentially serious injury to Ms. Brysacz, in that, based upon respondent's inadequate explanation, Ms. Brysacz forewent her opportunity to challenge the child abuse charges brought against her and, as a result, was subjected to substantial sanctions.

14. The foregoing conduct of the respondent establishes grounds for discipline as provided in C.R.C.P. 251.5 and violates Colo. RPC 1.4(b).

WHEREFORE, the complainant prays at the conclusion hereof.

## Claim II

**(A Lawyer Shall Provide Competent Representation To A Client–Colo. RPC 1.1)**

15. Paragraphs 2 through 9 are incorporated herein as if fully set forth.

16. Colo. RPC 1.1 requires that a lawyer provide competent representation to a client, and that competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

17. Respondent failed to provide Ms. Brysacz competent legal representation. In advising Ms. Brysacz, respondent ignored the substantial risk that, if Ms. Brysacz pled guilty, her mother would be required to close her day-care business. Respondent also inaccurately advised Ms. Brysacz as to the sanctions which would be imposed upon her should she plead guilty. Each of these failures by the respondent constitutes a failure to provide competent legal representation, as do both of them together.

18. The respondent knew or should have known that he was failing to provide competent legal representation to the client, but made no effort to remedy the situation.

19. Respondent's failure to provide competent legal representation to Ms. Brysacz caused serious or potentially serious injury to her. Ms. Brysacz was required to pay a fine of over $1,000, attend six months of anger management classes, and be on probation for two years. In addition, Ms. Brysacz's mother had to close her day-care business, in which Ms. Brysacz had been employed.

20. The foregoing conduct of the respondent in failing to provide competent legal representation to Ms. Brysacz establishes grounds for discipline as provided C.R.C.P. 251.5 and also violates Colo. RPC 1.1.

WHEREFORE, the complainant prays at the conclusion hereof.

## THE JAMES BIRCHFIELD MATTER

21. Respondent represented James Birchfield in a divorce case in Arapahoe County District Court, case no. 02DR1156.

22. Respondent failed to be available for a telephone status conference in Ms. Birchfield's case which had been scheduled for July 8, 2002. Respondent was aware of the status conference because he had been present in court with his client when it was set.

23. Judge Juanita Rice, the judge in the case, attempted to reach respondent and left a message to call. She subsequently telephoned the respondent four or five times, also leaving messages. She finally called the Supreme Court attorney registration line to get respondent's home number. She called that number and left a message. Respondent did not return any of Judge Rice's calls.

## Claim III

### (A Lawyer Shall Act With Reasonable Diligence And Promptness In Representing A Client And Shall Not Neglect A Legal Matter Entrusted To That Lawyer–Colo. RPC 1.3)

24. Paragraphs 21 through 23 are incorporated herein as if fully set forth.

25. Colo. RPC 1.3 provides that a lawyer shall act with reasonable diligence and promptness in representing a client, and that a lawyer shall not neglect a legal matter entrusted to that lawyer.

26. Respondent failed to act with reasonable diligence and promptness and neglected Mr. Birchfield's legal matter by failing to be available for the July 8, 2002 telephone status conference and by failing to return Judge Rice's calls. Each of these failures by the respondent constitutes a separate incident of lack of diligence and promptness, and/or neglect as do both of them together.

27. The respondent's lack of diligence and promptness, and/or neglect caused serious or potentially serious injury to Mr. Birchfield, in that the resolution of Mr. Birchfield's matter was delayed. Respondent's misconduct also required Judge Rice to spend time and effort to contact respondent.

28. The foregoing conduct of the respondent establishes grounds for discipline as provided in C.R.C.P. 251.5, and also violates Colo. RPC 1.3.

WHEREFORE, the complainant prays at the conclusion hereof.

## THE KELLY ZINNA MATTER

29. On January 24, 2002, Kelly Zinna retained the respondent to file a petition for dissolution. She gave him a $1,000 retainer. The respondent prepared a petition and Ms. Zinna executed it. With the respondent's knowledge, Ms. Zinna then left to relocate in Maryland because her husband had violated a restraining order she had against him and she was concerned for her safety if she stayed in Colorado.

30. The respondent never filed the petition for Ms. Zinna. Instead, Ms. Zinna's husband filed a petition on February 28, 2002 and the respondent accepted service on behalf of Ms. Zinna on March 3, 2002.[1] The respondent failed to respond and a default hearing was set. The respondent finally filed a response on Ms. Zinna's behalf on May 31, 2002.

31. Ms. Zinna's divorce matter was not complicated. The Zinnas had no children. The principal task in the divorce was to liquidate and separate the marital property.

32. On March 4, 2002, Ms. Zinna received an offer to purchase the marital residence. The home was in Ms. Zinna's name, marital debts fully encumbered the property, and Mr. Zinna had not filed a notice of *lis pendens* against the property. The closing was scheduled for April.

33. The respondent told Ms. Zinna that she would have to obtain her husband's permission to sell the home. The respondent told Ms. Zinna that he would work on obtaining Mr. Zinna's permission. Ms. Zinna understood he was taking appropriate action and delayed the closing while awaiting respondent's negotiation with Mr. Zinna's counsel on this point.

34. Respondent failed to negotiate with Mr. Zinna's counsel to obtain Mr. Zinna's agreement to release the restraining order which prohibits the sale of marital property while a divorce is pending. Mr. Zinna was willing to give that consent but because respondent never called Mr. Zinna's counsel, respondent never obtained the waiver and

---

1. The case is styled *In re the Marriage of Michael Zinna and Kelly Zinna,* Boulder County District Court, Case No. 02DR251.

therefore, failed to tell Ms. Zinna to go forward with the sale. As a result, Ms. Zinna delayed the sale of the residence until July, 2002.

35. During this period of time, Ms. Zinna was responsible for paying the first and second mortgages on the home, which totaled $2,568 per month. Due to the fact that Ms. Zinna had fled Colorado and did not have a full-time job in Maryland, she was unable to make the mortgage payments and her house went into foreclosure.

36. Due to the delay in the sale and the resultant foreclosure action filed on the home, the first mortgage loan payoff increased from approximately $236,000 in April, when the house could have sold, to $243,893.94 in July, when the house was sold. Ms. Zinna paid $3,066.05 to close the deal.

37. These damages were caused at least in part by respondent's neglect. The closing on the home was continued for several months and the sale was not closed until after Ms. Zinna retained new counsel.

38. In addition to the sale of the residence, the Zinnas also needed to resolve the ownership of a vehicle and payment of the debt associated with that vehicle. Mr. Zinna was driving a vehicle leased in Ms. Zinna's name. The lease was due to expire in May 2002. Mr. Zinna wanted the vehicle, and Ms. Zinna did not object to this if he assumed payments.

39. Mr. Zinna's counsel called the respondent and stated that Mr. Zinna would pay the monthly lease rental if Ms. Zinna would agree to acquiesce to his purchase of the vehicle at the end of the lease period. The respondent never conveyed this information to Ms. Zinna and the respondent never communicated an answer to Mr. Zinna's counsel. As a result, Mr. Zinna assumed that Ms. Zinna had refused to allow him to purchase the vehicle. Mr. Zinna stopped making the monthly lease payments and the vehicle was repossessed. Ms. Zinna owed $9,638.10 on the vehicle at the end of the contract.

40. In addition to delaying the sale of the home, and creating problems related to the vehicle, respondent neglected basic litigation tasks. He failed to request information regarding disclosures from Ms. Zinna and failed to forward discovery requests to Ms. Zinna. In addition, he failed to inform Ms. Zinna that her deposition had been set. Opposing counsel filed a motion to compel and a motion for sanctions against Ms. Zinna. The respondent never informed Ms. Zinna that the motions had been filed against her.

41. Respondent failed to timely communicate with Ms. Zinna. Despite the fact that he had her new address and her home and cell phone numbers, the respondent rarely contacted Ms. Zinna, despite numerous messages from her. Ms. Zinna had increasing trouble getting the respondent to return her telephone calls. Weeks passed before he would return calls.

42. Finally on July 1, 2002, Ms. Zinna reached the respondent on his cell phone and the respondent told her he did not have time to talk but would call her back. When she called his cell phone the next day, it had been disconnected. She called his office number and left a message on his voicemail. On July 6, 2002, Ms. Zinna wrote to the respondent terminating his representation and requesting a refund of her retainer and the return of her file. Ms. Zinna never heard from the respondent again.

43. Ms. Zinna then obtained new counsel, who immediately responded to the motion for sanctions and facilitated the closing of Ms. Zinna's home.

44. Illustrative of respondent's incompetent handling of Ms. Zinna's matters was his ineffectual effort to halt the foreclosure. Respondent filed an *ex parte* motion to enjoin the sale and obtained an order. However, respondent did not name or join the bank and the public trustee as parties. As a result, the order was without effect and the sale went forward.

### Claim IV

**(A Lawyer Shall Act A Reasonable Diligence And Promptness In Representing A Client And Shall Not Neglect A Legal Matter Entrusted To That Lawyer–Colo. RPC 1.3)**

45. Paragraphs 29 through 44 are incorporated herein as if fully set forth.

46. Colo. RPC 1.3 provides that a lawyer shall act with reasonable diligence and promptness in representing a client, and that a lawyer shall not neglect a legal matter entrusted to that lawyer.

47. The respondent failed to act with reasonable diligence and promptness and neglected Ms. Zinna's legal matters in each of the following respects:

    a. by failing to file a petition on behalf of Ms. Zinna and by delaying filing a response to Mr. Zinna's petition for almost three months;

    b. by failing to timely negotiate with Mr. Zinna's counsel concerning the sale of the marital residence;

    c. by failing to timely negotiate with Mr. Zinna's counsel concerning the lease of the vehicle;

    d. by failing to request information regarding disclosures from Ms. Zinna and by failing to forward discovery requests to Ms. Zinna;

    e. by failing to adequately coordinate Ms. Zinna's appearance at her deposition.

Each of these failures by the respondent constitutes a separate incident of lack of diligence and promptness, and/or neglect, as do all of them together.

48. The respondent knew or should have known that his lack of diligence and promptness, and/or neglect continued to occur over a period of months and involved a pattern and practice of lack of diligence and promptness, and/or neglect.

49. The respondent's lack of diligence and promptness, and/or neglect caused serious injury to Ms. Zinna, who was required to pay over $3,000 to close the sale of her home, who was required to pay approximately $10,000 to the company that leased the vehicle, who was required to pay her new counsel over $1,000 in fees to correct the problems caused by respondent, and who was required to pay other miscellaneous costs which could have been avoided had respondent acted in a diligent fashion.

50. The respondent's pattern and practice of failing to accomplish his professional tasks for Ms. Zinna constituted abandonment of the professional responsibilities he owed Ms. Zinna.

51. The foregoing conduct of the respondent establishes grounds for discipline as provided in C.R.C.P. 251.5, and also violates Colo. RPC 1.3.

WHEREFORE, the complainant prays at the conclusion hereof.

## Claim V

**(A Lawyer Shall Keep A Client Reasonably Informed About The Status Of A Matter And Promptly Comply With Reasonable Requests For Information– Colo. RPC 1.4(a))**

52. Paragraphs 29 through 44 are incorporated herein as if fully set forth.

53. Colo. RPC 1.4(a) provides that a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

54. Respondent failed to keep Ms. Zinna reasonably informed about the status of her legal matters and failed to comply promptly with reasonable requests for information in the following respects:

    a. by failing to promptly and reasonably inform Ms. Zinna about the status of respondent's efforts (or lack thereof) to negotiate with Mr. Zinna's counsel concerning the sale of the house and the transfer of the leased vehicle;

    b. by failing to forward discovery Ms. Zinna;

    c. by failing to inform Ms. Zinna that her deposition had been set;

    d. by failing to inform Ms. Zinna that opposing counsel had filed a motion to compel and motion for sanctions against Ms. Zinna; and

    e. by failing to timely respond to Ms. Zinna's numerous messages to him.

Each of these failures to communicate adequately with the client constitutes a separate violation of Colo. RPC 1.4(a) as do all of them together.

55. The respondent knew or should have known that he had failed to communicate adequately with Ms. Zinna over an extended period of months.

56. The respondent's pattern and practice of failing to communicate with Ms. Zinna caused Ms. Zinna serious injury, including her having to pay over $3,000 to close the sale of her house, her being liable for approximately $10,000 on the vehicle lease, her being required to pay successor counsel over $1,000 to correct the mistakes made by respondent, and her having to pay other miscellaneous costs which resulted from respondent's delay.

57. Respondent's failure to communicate on these matter constituted abandonment of his professional responsibilities owed to Ms. Zinna.

58. The foregoing conduct of the respondent establishes grounds for discipline as provided in C.R.C.P. 251.5, and also violates Colo. RPC 1.4(a).

WHEREFORE, the complainant prays at the conclusion hereof.

## Claim VI

### (A Lawyer Shall Provide Competent Representation To A Client– Colo. RPC 1.1)

59. Paragraphs 29 through 44 are incorporated herein as if fully set forth.

60. Colo. RPC 1.1 requires that a lawyer provide competent representation to a client, and that competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

61. Respondent failed to provide Ms. Zinna competent legal representation by failing to name or join the bank and the public trustee in his motion to enjoin the foreclosures sale of Ms. Zinna's residence. As a result of respondent's failure to do so, the order which respondent obtained was without effect and the foreclosure sale went forward.

62. The respondent knew or should have known that he was failing to provide competent legal representation to Ms. Zinna, but made no efforts to remedy the situation.

63. Respondent's failure to provide competent legal representation to Ms. Zinna caused serious or potentially serious injury to her, in that it contributed to the delay in the sale of her residence.

64. The foregoing conduct of the respondent in failing to provide competent legal representation to the client establishes grounds for discipline as provided in C.R.C.P. 251.5 and also violates Colo. RPC 1.1.

WHEREFORE, the complainant prays at the conclusion hereof.

## THE GREG STEWART MATTER

65. Greg Stewart retained respondent in early 2002 to assist in having Mr. Stewart's child support obligation reduced due to a change in circumstances. Mr. Stewart had lost his job and could no longer afford to pay the child support ordered by the court. Mr. Stewart told respondent he wanted the child support obligation reduced as soon as possible.

66. Respondent requested a $1,000 retainer. Mr. Stewart borrowed the money from his mother and sent it to respondent. Respondent cashed the check. There is no evidence that respondent did anything to earn the money he received.

67. Mr. Stewart heard nothing from respondent thereafter. Mr. Stewart and his mother made numerous calls to respondent, leaving messages. None were returned. At one point, Mr. Stewart talked with a secretary who was working for respondent. The secretary was unable to tell Mr. Stewart what respondent was doing on the case. Because Mr. Stewart was unable to contact the respondent, he did not get the chance to ask for his money back or for an accounting.

## Claim VII

### (A Lawyer Shall Not Engage In Conduct Involving Dishonesty, Fraud, Deceit Or Misrepresentation–Colo. RPC 8.4(c))

68. Paragraphs 65 through 67 are incorporated herein as if fully set forth.

69. Colo. RPC 8.4(c) provides that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

70. Misrepresentation includes knowing conversion.

71. Respondent knowingly converted Mr. Stewart's $1,000. Respondent took the retainer entrusted to him from Mr. Stewart without performing services therefor. Respondent knew he was not entitled to keep Mr. Stewart's retainer without performing services and, nonetheless, did so. Thus, the respondent knew the property still belonged to the client. The respondent also knew that his taking of these funds was not authorized by this client.

72. The foregoing conduct of the respondent establishes grounds for discipline as provided for and in C.R.C.P. 251.5 and violates Colo. RPC 8.4(c).

WHEREFORE, the complainant prays at the conclusion hereof.

## IV. *Claim VIII*

### (Upon Termination, A Lawyer Shall Take Steps To Protect A Client's Interest And Surrender Papers And Property To The Client–Colo. RPC 1.16(d))

73. Paragraphs 65 through 67 are incorporated herein as if fully set forth.

74. Colo. RPC 1.16(d) provides that upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned.

75. Respondent violated this rule by taking money from Mr. Stewart and then abandoning his case. At the time the respondent abandoned the case, the respondent effectively terminated the representation. Respon-

dent took no action to assist Mr. Stewart in reducing his child support obligation. Respondent did not return Mr. Stewart's and his mother's calls over a period of several months.

76. The respondent failed to take steps to protect the client's interests. The respondent failed to give reasonable notice to the client that he terminated the representation. The respondent failed to allow time for employment of other counsel. The respondent failed to surrender papers and failed to return the retainer. Respondent knew or should have known that he was failing to protect Mr. Stewart's interests by not communicating with him and by not working on his case.

77. Respondent caused injury to potential injury to Mr. Stewart, including by depriving him of counsel, by depriving him of the opportunity to reduce his child support obligation, and by delaying his obtaining of competent and diligent counsel to succeed respondent.

78. The foregoing conduct of the respondent establishes grounds for discipline as provided for and in C.R.C.P. 251.5 and violates Colo. RPC 1.16(d).

WHEREFORE, the complainant prays at the conclusion hereof.

### THE SHEREE DION BRACKEEN MATTER

79. Sheree Brackeen retained respondent to represent her on a matter related to Ms. Brakeen's child support obligation.[2] She paid respondent an $800 retainer, which she borrowed from her uncle. She later made additional payments to respondent, bringing the total to over $1,000. Ms. Brackeen turned over to respondent her file of the divorce case.

80. During a meeting attended by respondent, Ms. Brackeen and her uncle, respondent made sexually suggestive comments to Ms. Brackeen while her uncle was out of the room. Ms. Brackeen told her

---

2. The case is styled *Sheree Brackeen v. Michael Glaser*, Adams County District Court, Case No. 99DR890.

uncle never to leave her alone with respondent again.

81. Sometime later, Ms. Brackeen received a call from respondent's secretary. The secretary told Ms. Brackeen to meet respondent at the courthouse. When Ms. Brackeen arrived, respondent had already agreed to a settlement with opposing counsel. Respondent entered into this settlement without Ms. Brackeen's knowledge or consent.

82. The settlement to which respondent had agreed required Ms. Brackeen to make child support payments prior to the date on which Ms. Brackeen customarily was paid by her employer. This meant that it would be difficult for Ms. Brackeen to make timely payments, because she would not have the money to do so. Instead, she would have to wait to receive her paycheck before making the child support payments.

83. Ms. Brackeen pointed this out to respondent. He said "just agree to it" and that he would work things out with opposing counsel later. Respondent also told Ms. Brackeen that, if she didn't agree to the stipulation, she would go to jail. Based on respondent's statements, Ms. Brackeen agreed to the settlement the respondent had negotiated.

84. Because she did not receive her paycheck until after the payments were due, Ms. Brackeen's payments were late. Ms. Brackeen continued making child support payments in this fashion for several months. She assumed the late payments were acceptable because respondent did not inform her of any objections raised by her ex-husband. Nor did respondent tell her that a contempt charge had been filed against her.

85. However, unbeknownst to Ms. Brackeen, her ex-husband had filed a motion for contempt based on the late payments. Respondent did not inform Ms. Brackeen of this. And, respondent did not return her phone calls making inquires about the divorce case.

86. Because of respondent's mishandling of some traffic tickets Ms. Brackeen had received (discussed below), she determined to fire respondent. Ms. Brackeen told respondent he was fired as her lawyer and that she would not pay for the mishandled traffic cases. Ms. Brackeen asked respondent to withdraw as her attorney in the divorce case and the traffic case and asked for her file back.

87. Respondent did not withdraw and he did not return Ms. Brackeen's phone calls or respond to her messages that he return her file. She was unable to reach respondent for over two months. As a result she did not have her file of the divorce case and did not know what to do.

88. Eventually, Ms. Brackeen called the court to ask how to get respondent off her divorce case. The court clerk told her that a hearing on her ex-husband's contempt motion was scheduled in two days. Respondent had never informed her of this. She filed her own motion for an extension of time, but the judge denied it.

89. On the day of the hearing, respondent showed up. The judge asked Ms. Brackeen if she had made payments late and she said yes, because it was impossible to make timely payments. Respondent asked to withdraw and the judge granted his request.

90. The trial of Ms. Brackeen's alleged contempt went forward without her having counsel. Opposing counsel asked for jail time and the judge sentenced her to 30 days in jail. In addition, she was ordered to pay thousands of dollars to her ex-husband's attorney, for fees incurred because respondent did not respond to the contempt motion.

91. Because of this, Ms. Brackeen lost her job and lost her house. She feels that none of this would have happened had respondent listened to her and negotiated a child support payment schedule that she could meet timely.

92. Respondent also represented Ms. Brackeen on several speeding tickets. She did not ask respondent to do this; he did it on his own. In one instance, respondent handled a speeding ticket for Ms. Brackeen in Englewood. He ended up confessing judgment and, as a result, she lost her license.

## Claim IX

**(Upon Termination, A Lawyer Shall Take Steps To Protect A Client's Interest And Surrender Papers And Property To The Client–Colo. RPC 1.16(d))**

93. Paragraphs 79 through 92 are incorporated herein as if fully set forth.

94. Colo. RPC 1.16(d) provides that upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned.

95. Respondent violated this rule by neglecting Ms. Brackeen's divorce case over a period of three months. During this time, respondent did not withdraw (as Ms. Brackeen had requested), did not return Ms. Brackeen's calls, did not return the retainer she had paid him, and continued to retain Ms. Brackeen's file, ignoring her messages that he return her file. Respondent also left Ms. Brackeen in the difficult position of being unable to retain substitute counsel before the hearing on Ms. Brackeen's ex-husband's contempt motion, with the result that Ms. Brackeen was forced to represent herself at that hearing.

96. Respondent knew or should have known that he was failing to protect Ms. Brackeen's interest by not working on her case, by not communicating with her, by not moving to withdraw, and by not returning her file. Respondent also knew he had not earned the retainer she gave him, because he had not provided her with competent and diligent representation.

97. Respondent caused injury or potential injury to Ms. Brackeen, including by depriving her of counsel, by depriving her of her file, and by delaying her obtaining of competent and diligent counsel to succeed him, with the result that, *inter alia,* Ms. Brackeen was required to represent herself at the contempt hearing.

98. The foregoing conduct of the respondent establishes grounds for discipline as provided for and in C.R.C.P. 251.5 and violates Colo. RPC 1.16(d).

WHEREFORE, the complainant prays at the conclusion hereof.

## Claim X

**(A Lawyer Shall Provide Competent Representation To A Client–Colo. RPC 1.1)**

99. Paragraphs 79 through 92 are incorporated herein as if fully set forth.

100. Colo. RPC 1.1 requires that a lawyer provide competent representation to a client, and that competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

101. Respondent failed to provide Ms. Brackeen with competent legal representation by entering into an agreement with her ex-husband's counsel without first consulting Ms. Brackeen as to whether the terms of the settlement were feasible and appropriate. As a result of respondent's failure to discuss the negotiated terms with Ms. Brackeen, and respondent's failure to obtain authority from Ms. Brackeen to agree to the terms concerning the timing of the child support payments, Ms. Brackeen was exposed to liability for contempt of court and ultimately was found to have been in contempt of court.

102. The respondent knew or should have known that he was failing to provide competent legal representation to Ms. Brackeen, but made no efforts to remedy the situation.

103. Respondent's failure to provide competent legal representation to Ms. Brackeen caused serious or potentially serious injury to her, in that she was unable to make child support payments timely and ultimately was found to be in contempt of court for failing to do so.

104. The foregoing conduct of the respondent in failing to provide competent legal representation to the client establishes grounds for discipline as provided in C.R.C.P. 251.5 and also violates Colo. RPC 1.1.

WHEREFORE, the complainant prays at the conclusion hereof.

### Claim XI

(A Lawyer Shall Keep A Client Reasonably Informed About The Status Of A Matter, Promptly Comply With Reasonable Requests For Information, And Explain A Matter To The Extent Reasonably Necessary To Permit The Client To Make Informed Decisions Regarding The Representation–Colo. RPC 1.4(a) and (b))

105. Paragraphs 79 through 92 are incorporated herein as if fully set forth.

106. Colo. RPC 1.4(a) provides that a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

107. Respondent failed to keep Ms. Brackeen reasonably informed about the status of her legal matter and failed to comply promptly with reasonable requests for information in the following respects:

a. respondent failed to inform Ms. Brackeen that a contempt citation had been filed against her;

b. respondent failed to return Ms. Brackeen's calls; and

c. respondent failed to inform Ms. Brackeen that her ex-husband had any objection to her making support payments late.

Each of these failures to communicate adequately with Ms. Brackeen constitutes a separate violation of Colo. RPC 1.4(a) as do all of them together.

108. The respondent knew or should have known that he had failed to communicate adequately with Ms. Brackeen over an extended period of months.

109. The respondent's pattern and practice of failing to communicate with Ms. Brackeen caused serious or potentially serious injuries to her. Ms. Brackeen did not know that her ex-husband had raised objections to her making late payments of child support and that he had filed a motion for contempt against her, which had been scheduled for hearing without her knowledge. As a result of respondent's lack of communication, Ms. Brackeen was not able to adequately prepare for the contempt hearing or obtain successor counsel to aid her at the hearing. Ms. Brackeen suffered adverse consequences thereby, including being sentenced to thirty days in jail, being ordered to pay her ex-husband's attorneys fees, losing her job and losing her house.

110. Respondent violated Colo. RPC 1.4(b), that provides that a lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

111. Respondent failed to explain to Ms. Brackeen her divorce matter and her traffic matters to the extent reasonably necessary to permit Ms. Brackeen to make informed decisions in the following respects:

a. respondent failed to inform Ms. Brackeen of the consequences which might result from the settlement agreement respondent had negotiated on behalf of Ms. Brackeen;

b. respondent failed to inform Ms. Brackeen of the consequences which might flow from her ex-husband's having filed a motion for issuance of a contempt citation;

c. respondent failed to adequately discuss with Ms. Brackeen respondent's handling of Ms. Brackeen's speeding tickets.

Each of these failures to explain constitutes a separate violation of Colo. RPC 1.4(b) as do both of them together.

112. The respondent knew or should have known that he failed to properly explain the legal matters to Ms. Brackeen over an extended period of months.

113. The respondent's pattern and practice of failing to explain these legal matters to Ms. Brackeen caused serious or potentially serious injury to her, in that she was held in contempt of court, sentenced to jail for thirty days, ordered to pay her ex-husband's attorneys fees, lost her driver's license and suffered economic damages.

114. The foregoing conduct of the respondent establishes grounds for discipline as

provided in C.R.C.P. 251.5, and violates Colo. RPC 1.4(a) and (b).

WHEREFORE, the complainant prays at the conclusion hereof.

### THE MICHELLE MARSCHEL MATTER

115. Michelle Marschel retained respondent to represent her in a child custody matter. Ms. Marschel wanted to obtain custody of her child. She paid respondent $800.

116. Respondent failed to file any motion requesting the court to give custody to Ms. Marschel. She left numerous messages for respondent but he did not return her calls.

117. Finally, Ms. Marschel told the receptionist at respondent's office that she wanted her retainer back. Thereafter, respondent called and agreed to return the retainer. He sent a check, but it bounced. He sent a second check, which cleared, returning the $800.

118. However, because of respondent's failure to prosecute her action, Ms. Marschel's efforts to obtain custody of her child likely will be delayed for at least six months. This is in part because she is now residing part time in Jacksonville, Florida and it will take six months to establish residency there. She has not yet been able to find another attorney to take her case, and the matter of her child's custody is in limbo.

### Claim XII

**(A Lawyer Shall Act With Reasonable Diligence And Promptness In Representing A Client And Shall Not Neglect The Legal Matter Entrusted To That Lawyer–Colo. RPC 1.3)**

119. Paragraphs 115 through 118 are incorporated herein as if fully set forth.

120. Colo. RPC 1.3 provides that a lawyer shall act with reasonable diligence and promptness in representing a client, and that a lawyer shall not neglect a legal matter entrusted to that lawyer.

121. Respondent failed to act with reasonable diligence and promptness and neglected Ms. Marschel's legal matter by failing to file a motion for Ms. Marschel seeking custody of her child.

122. The respondent knew or should have known that his lack of diligence and promptness, and neglect continued to occur over a period of time and involved a pattern and practice of lack of diligence and promptness, and neglect.

123. The respondent's lack of diligence and promptness, and neglect caused serious or potentially serious injuries to Ms. Marschel. As a result of respondent's neglect, Ms. Marschel's efforts to obtain custody of her child likely will be delayed for a number of months.

124. The respondent's pattern and practice of failing to accomplish his professional tasks for Ms. Marschel constituted abandonment of the professional responsibilities owed to her.

125. The foregoing conduct of the respondent establishes grounds for discipline as provided in C.R.C.P. 251.5, and also violates Colo. RPC 1.3.

WHEREFORE, the complainant prays at the conclusion hereof.

### Claim XIII

**(A Lawyer Shall Keep A Client Reasonably Informed About The Status Of A Matter And Promptly Comply With Reasonable Requests For Information– Colo. RPC 1.4(a))**

126. Paragraphs 115 through 118 are incorporated herein as if fully set forth.

127. Colo. RPC 1.4(a) provides that a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

128. Respondent failed to keep Ms. Marschel reasonably informed about the status of her legal matters and failed to comply promptly with reasonable requests for information. Respondent did not communicate with Ms. Marschel about respondent's work on her motion requesting that the court give custody of her children to Ms. Marschel. Respondent also failed to return Ms. Marschel's numerous telephone messages to him.

Each of these failures to communicate adequately with Ms. Marschel constituted a separate violation of Colo. RPC 1.4(a) as to do all of them together.

129. The respondent knew or should have known that he had failed to communicate adequately with Ms. Marschel over a sustained period of time.

130. The respondent's pattern and practice of failing to communicate with Ms. Marschel caused serious or potentially injury to Ms. Marschel, in that Ms. Marschel was delayed in obtaining custody of her child.

WHEREFORE, the complainant prays at the conclusion hereof.

## Claim XIV

### (Upon Termination, A Lawyer Shall Take Steps To Protect A Client's Interest And Surrender Papers And Property To The Client–Colo. RPC 1.16(d))

131. Paragraphs 115 through 118 are incorporated herein as if fully set forth.

132. Colo. RPC 1.16(d) provides that upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned.

133. Respondent violated this rule by abandoning Ms. Marschel's case. Respondent abandoned Ms. Marschel by failing to make efforts to pursue Ms. Marschel's obtaining custody of her child and by failing to return Ms. Marschel's calls. By abandoning the client, the respondent effectively terminated the representation. The respondent then failed to take any steps to protect his clients' interests. In particular, the respondent did not notify the client that he had terminated the relationship.

134. Respondent knew or should have known that he was failing to protect Ms.

Marschel's interests by not communicating with her, by not working on her case, and in particular, by not filing the motion Ms. Marschel had requested concerning child custody.

135. Respondent caused injury to potential injury to Ms. Marschel, including by depriving her of adequate counsel, by depriving her of her day in court concerning child custody, and by delaying her obtaining of custody of her children.

136. The foregoing conduct of the respondent establishes grounds for discipline as provided for and in C.R.C.P. 251.5 and violates Colo. RPC 1.16(d).

WHEREFORE, the complainant prays at the conclusion hereof.

## THE MARCUS FOSTER MATTER

137. Mr. Foster hired respondent to defend him against charges including second-degree assault, a class four felony.[3] Mr. Foster's brother paid respondent $2,000 as a retainer. Respondent prepared a retainer agreement stating that respondent would represent Mr. Foster through disposition or trial, and Mr. Foster signed it.

138. As part of his bond, Mr. Foster was placed on a global positioning system ("GPS") ankle bracelet. This cost Mr. Foster $15 per day, more than Mr. Foster could afford. Mr. Foster asked respondent to file motions to have the bracelet removed and the bond reduced.

139. Respondent appeared in Denver County Court and asked that the case be bound over to District Court for arraignment. Prior to the arraignment date, Mr. Foster asked respondent about hiring a private investigator. Respondent agreed to set up a meeting between Mr. Foster, a private investigator and respondent.

140. As preparation for the meeting, respondent asked Mr. Foster to review the discovery provided by the prosecution and to note inconsistencies between the witnesses' statements. Respondent also asked Mr. Foster to prepare a statement of his version of the facts, including the witnesses' inconsis-

**3.** The case is styled *People v. Marcus Foster,*  Denver District Court, Case No. 02CR542.

tencies therein. This material was to be presented to the private investigator at the scheduled meeting. Mr. Foster did so.

141. Mr. Foster appeared at the appointed time, but no private investigator attended. Instead, only respondent and his office manager were there. Respondent asked Mr. Foster to advance funds for the private investigator, which he did.

142. Respondent also asked Mr. Foster to contact witnesses and set up appointments for them to be interviewed by the investigator. Mr. Foster did so, but was surprised that respondent's office was not handling this.

143. At the end of the first full month of respondent's representation, Mr. Foster asked that respondent provide a bill, setting forth the hours respondent had spent on the case. Respondent promised to do so, but did not.

144. Respondent and Mr. Foster attended the arraignment. Respondent asked for a continuance, on grounds he had not had sufficient time to prepare. The court granted the continuance.

145. While at the arraignment, Mr. Foster again requested that respondent file a motion to reduce the bond and terminate the GPS ankle bracelet. Mr. Foster was concerned because he had fallen behind in his payments for the ankle bracelet, and the probation department was threatening to have him returned to jail. Respondent agreed to file the motion Mr. Foster requested before the next hearing, but did not do so. Respondent also promised to talk with the head of the GPS program, but apparently never did so.

146. Prior to the continued arraignment, Mr. Foster spoke with the private investigator. The investigator had conducted a number of interviews, and Mr. Foster reviewed the interview summaries.

147. At the continued arraignment, respondent entered a plea of not guilty on Mr. Foster's behalf. Respondent also requested that a motions hearing be set and the court

scheduled one for about seven weeks in the future.

148. Prior to the motions hearing, Mr. Foster tried calling respondent several times to discuss the motions respondent was to file and the interviews which the private investigator had conducted. Mr. Foster left messages, but respondent did not return the calls. Respondent then called Mr. Foster and told him to come to the office to pick up copies of additional interview summaries. Mr. Foster went to respondent's office twice, but was told that no summaries were available for him.

149. As the motions hearing was approaching, respondent met with Mr. Foster at a restaurant. Respondent promised to file motions addressing suppression of the evidence, self-defense, and the amount of the bond. Respondent also gave Mr. Foster two witness interview summaries to read.

150. At the motions hearing, despite Mr. Foster's requests that motions be filed and despite respondent's promises to do so, respondent told the court the defense had no motions. Mr. Foster was shocked and angry.

151. The judge set trial for about ten weeks away. Respondent requested a disposition date prior to trial, and the judge scheduled that as well.

152. At the disposition, respondent told Mr. Foster he had been unsuccessful at achieving a plea bargain with the prosecutor. Mr. Foster again asked respondent to request that the GPS ankle bracelet be removed.

153. Respondent told Mr. Foster "it was time to get into trial mode". Respondent asked Mr. Foster for more money. Mr. Foster pointed out that he had never received a bill, and questioned whether respondent had used the entire $2,000 retainer. Respondent told Mr. Foster that the entire amount had been consumed with court appearances (*i.e.*, the arraignment, continued arraignment, the motions hearing and disposition) and the two meetings, one at respondent's office and one at the restaurant. Mr. Foster gave respondent two post-dated checks for $500 each

(the checks were post-dated to give Mr. Foster the time to obtain the funds to pay them).

154. After the disposition hearing, Mr. Foster learned that the probation department was preparing to file a motion to send Mr. Foster back to jail, because Mr. Foster had fallen further behind on his payments for the GPS ankle bracelet. Mr. Foster called respondent about this; respondent did not return the call.

155. Mr. Foster also called respondent about his (Mr. Foster's) reviewing additional witness interview summaries. Respondent did not return the call. Mr. Foster went to respondent's office, but no summaries were available for his review.

156. When the date of the first post-dated check arrived, respondent cashed the check right away. However, respondent did not return Mr. Foster's calls made to respondent's office and cell phone. When Mr. Foster went by respondent's office, no one was there. The receptionist told Mr. Foster that respondent had cancelled his lease and removed his personal belongings. Mr. Foster stopped payment on the second post-dated check. Still respondent did not call.

157. Mr. Foster called the private investigator, who told him that he had not heard from respondent in several weeks. The private investigator recommended that Mr. Foster find other counsel. The investigator gave Mr. Foster several names. As trial was fast approaching, Mr. Foster contacted and hired a new lawyer.

### Claim XV

**(A Lawyer Shall Not Engage In Conduct Involving Dishonesty, Fraud, Deceit Or Misrepresentation–Colo. RPC 8.4(c))**

158. Paragraphs 137 through 157 are incorporated herein as if fully set forth.

159. Colo. RPC 8.4(c) provides that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

160. Respondent violated this rule by taking $500 (see paragraph 153) from Mr. Fos-

ter prior to trial for the purpose of preparing for trial, which respondent then failed to do.

161. Respondent knew that Mr. Foster had given him the $500 as a retainer, to be applied to fees only as respondent earned them. Respondent knew that he was authorized to take the $500 only after he had spent the appropriate amount of time preparing for trial. Notwithstanding his knowledge of this, respondent took Mr. Foster's $500 retainer without having earned it.

162. Respondent's misappropriation of Mr. Foster's $500 caused injury and potential injury to Mr. Foster in the amount of the converted funds.

163. The foregoing conduct of the respondent establishes grounds for discipline as provided for and in C.R.C.P. 251.5 and violates Colo. RPC 8.4(c).

WHEREFORE, the complainant prays at the conclusion hereof.

### Claim XVI

**(Upon Termination, A Lawyer Shall Take Steps To Protect A Client's Interest And Surrender Papers And Property To The Client–Colo. RPC 1.16(d))**

164. Paragraphs 137 through 157 are incorporated herein as if fully set forth.

165. Colo. RPC 1.16(d) provides that upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned.

166. Respondent violated this rule by abandoning Mr. Foster's case after the disposition hearing, including by failing to give Mr. Foster notice that he was ending his work on Mr. Foster's case, by failing to return Mr. Foster's calls, by failing to return Mr. Foster's $500, by failing to return Mr. Foster's file, and by closing his office without informing Mr. Foster of his forwarding address. Each of these abandonments consti-

tutes a separate violation of Colo. RPC 1.16(d) as do all of them together.

167. Respondent knew or should have known that he was failing to protect Mr. Foster's interests over a sustained period of time by not communicating with him, by not working on his case, including the motions that respondent had promised to prepare, by failing to prepare for trial and, instead, by closing his office and disconnecting his telephone without notice to Mr. Foster and without returning to him his retainer or files.

168. Respondent caused injury or potential injury to Mr. Foster, by depriving him of adequate and diligent counsel (*e.g.*, for the filing of defense motions), and by delaying Mr. Foster's obtaining competent and diligent counsel to succeed respondent.

169. The foregoing conduct of the respondent establishes grounds for discipline as provided for and in C.R.C.P. 251.5 and violates Colo. RPC 1.16(d).

WHEREFORE, the complainant prays at the conclusion hereof.

### Claim XVII

**(A Lawyer Shall Act With Reasonable Diligence And Promptness In Representing A Client And Shall Not Neglect A Legal Matter Entrusted To That Lawyer–Colo. RPC 1.3)**

170. Paragraphs 137 through 157 are incorporated herein as if fully set forth.

171. Colo. RPC 1.3 provides that a lawyer shall act with reasonable diligence and promptness in representing a client, and that a lawyer shall not neglect a legal matter entrusted to that lawyer.

172. Respondent failed to act with reasonable diligence and promptness and neglected Mr. Foster's legal matters by failing to file motions on Mr. Foster's behalf, by failing to address Mr. Foster's difficulties related to the ankle bracelet, and by failing to prepare for trial. Each of these failures by the respondent constitutes a separate incident of lack of diligence and promptness, and/or neglect, as do all of them together.

173. The respondent knew or should have known that his lack of diligence and promptness, and neglect continued to occur over a period of months and involved a pattern and practice of lack of diligence and promptness, and neglect.

174. The respondent's lack of diligence and promptness, and neglect caused serious or potentially serious injuries to Mr. Foster. Motions were not timely filed on Mr. Foster's behalf and, as a result, Mr. Foster continued to incur charges for the GPS bracelet that he could not afford. In addition, Mr. Foster was delayed in obtaining diligent and competent counsel.

175. The respondent's pattern and practice of failing to accomplish his professional tasks for Mr. Foster constituted abandonment of the professional responsibilities owed Mr. Foster.

176. The foregoing conduct of the respondent establishes grounds for discipline as provided in C.R.C.P. 251.5, and also violates Colo. RPC 1.3.

WHEREFORE, the complainant prays at the conclusion hereof.

### Claim XVIII

**(A Lawyer Shall Keep A Client Reasonably Informed About The Status Of A Matter And Promptly Comply With Reasonable Requests For Information–Colo. RPC 1.4(a))**

177. Paragraphs 137 through 157 are incorporated herein as if fully set forth.

178. Colo. RPC 1.4(a) provides that a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

179. Respondent failed to keep Mr. Foster reasonably informed about the status of his case and failed to comply promptly with Mr. Foster's reasonable requests for information in the following respects:

a. respondent failed to return Mr. Foster's calls, made prior to the motions hearing;

b. respondent failed to make available to Mr. Foster prior to the motions hearing additional interview summaries;

c. respondent failed to respond to Mr. Foster's calls after the disposition hearing concerning the GPS ankle bracelet and concerning Mr. Foster's reviewing additional witness interview summaries;

d. respondent did not return Mr. Foster's calls after respondent cashed the first post-dated check;

e. respondent did not inform Mr. Foster that respondent has cancelled his lease and removed his personal belongings from his office.

Each of these failures to communicate adequately with the client constitutes a separate violation of Colo. RPC 1.4(a) as do all of them together.

180. The respondent knew or should have known that he had failed to communicate adequately with Mr. Foster over an extended period of time.

181. The respondent's pattern and practice of failing to communicate with Mr. Foster caused serious or potentially serious injury. Mr. Foster did not know what was happening on his cases, was prevented from participating appropriately in his cases, and was delayed in obtaining diligent and competent successor counsel.

182. The foregoing conduct of the respondent establishes grounds for discipline as provided in C.R.C.P. 251.5, and violates Colo. RPC 1.4(a).

WHEREFORE, the complainant prays at the conclusion hereof.

### THE TROY R. MOORE MATTER

183. Troy Moore was employed by a construction company. The company accused Mr. Moore of embezzlement. After a sheriff's investigator contacted Mr. Moore, he retained respondent. He paid respondent a total of $2,800.

184. Respondent and Mr. Moore met with the investigator. The investigator asked for a written statement from Mr. Moore, and respondent told Mr. Moore to prepare it.

Mr. Moore did so and delivered the written statement to the receptionist at respondent's office.

185. Mr. Moore never heard from respondent again. After several months, and after speaking with the Office of Attorney Regulation Counsel, Mr. Moore decided to hire a new lawyer. Mr. Moore has learned that the sheriff still has an open investigation on the matter.

### Claim XIX

### (A Lawyer Shall Not Engage In Conduct Involving Dishonesty, Fraud, Deceit Or Misrepresentation–Colo. RPC 8.4(c))

186. Paragraphs 183 through 185 are incorporated herein as if fully set forth.

187. Colo. RPC 8.4(c) provides that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

188. Respondent violated this rule by taking a total of $2,800 as a retainer from Mr. Moore and doing little or no work on his case.

189. Respondent knew that Mr. Moore had given him the retainer with the understanding that respondent would be authorized to draw all or part of the retainer out of trust only after respondent had legitimately earned fees from working on the case. Notwithstanding this knowledge, respondent took the $2,800 and converted it to his own use without having performed services for Mr. Moore.

190. Respondent's deceit caused injury to Mr. Moore in the amount of $2,800. Respondent's deceit also delayed and interfered with Mr. Moore's obtaining competent and diligent counsel.

191. The foregoing conduct of the respondent establishes grounds for discipline as provided for and in C.R.C.P. 251.5 and violates Colo. RPC 8.4(c).

WHEREFORE, the complainant prays at the conclusion hereof.

## THE MICHELLE AUCKLY MATTER

192. Michelle Auckly hired respondent to assist in her divorce.[4] While reviewing a child-support worksheet, Ms. Auckly noticed a mathematical error in the number of her children's overnight visitations with their father. The amount had been calculated greater than the actual visits, resulting in a child-support underpayment to Ms. Auckly of approximately $100 per month.

193. Ms. Auckly met with respondent and asked that he file a motion seeking to correct the error. Respondent promised to do so. When he did not, Ms. Auckly left messages, asking why. Respondent had his secretary call and ask Ms. Auckly for an additional $500. Ms. Auckly said she did not think an additional payment was appropriate, since respondent should have caught the mistake at the time child support was set.

194. Ms. Auckly called respondent and left messages asking him to call to discuss the matter. Eventually, she left a message asking him to withdraw. Then, she ran into him at the Adams County Courthouse. Respondent said he would file the motion seeking correction but that he wanted $500 to do so. Respondent said he was willing to accept the $500 and forgive Ms. Auckly's substantial outstanding balance.

195. Ms. Auckly protested that she was not aware of any outstanding balance. She had not received a bill from respondent for many months. Respondent promised "he would get all the charges together and get back with [Ms. Auckly] so we can clear this up". Ms. Auckly never heard from respondent again.

196. After several weeks, Ms. Auckly faxed a letter to respondent terminating his services. She hired new counsel, who applied to the court for correction of the mathematical error. The application was denied due to the passage of time.

4. The case is styled *In re the Marriage of Robert J. Auckly and Michelle Auckly,* Adams County District Court, Case No. 99DR1514.

### Claim XX

**(A Lawyer Shall Act With Reasonable Diligence And Promptness In Representing A Client And Shall Not Neglect A Legal Matter Entrusted To That Lawyer–Colo. RPC 1.3)**

197. Paragraphs 192 through 196 are incorporated herein as if fully set forth.

198. Colo. RPC 1.3 provides that a lawyer shall act with reasonable diligence and promptness in representing a client, and that a lawyer shall not neglect a legal matter entrusted to that lawyer.

199. Respondent failed to act with reasonable diligence and promptness and neglected Ms. Auckly's legal matter by failing to file a motion for Ms. Auckly correcting a prior error in her child support calculation.

200. The respondent knew or should have known that his lack of diligence and promptness, and neglect, continued to occur over a period of months and involved a pattern and practice of lack of diligence and promptness, and neglect.

201. The respondent's lack of diligence and promptness, and neglect caused serious injury to Ms. Auckly, because she was denied her opportunity to obtain a correction of the mathematical error and recovery of the underpayments.

202. The foregoing conduct of the respondent establishes grounds for discipline as provided in C.R.C.P. 251.5, and also violates Colo. RPC 1.3.

WHEREFORE, the complainant prays at the conclusion hereof.

### Claim XXI

**(A Lawyer Shall Keep A Client Reasonably Informed About The Status Of A Matter and Promptly Comply With Reasonable Requests For Information– Colo. RPC 1.4(a))**

203. Paragraphs 192 through 196 are incorporated herein as if fully set forth.

204. Colo. RPC 1.4(a) provides that a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

205. Respondent violated this rule by failing to respond to Ms. Auckly's messages asking him to call to discuss the matter. Respondent also failed to contact Ms. Auckly to discuss the supposed outstanding charges.

206. The respondent knew or should have known that he had failed to communicate adequately with Ms. Auckly over an extended period of time.

207. The respondent's pattern and practice of failing to communicate with his clients caused serious injury to Ms. Auckly in that she lost her opportunity to obtain a recalculation of child support underpayments, and lost the opportunity to recover those underpayments.

208. The foregoing conduct of the respondent establishes grounds for discipline as provided in C.R.C.P. 251.5, and violates Colo. RPC 1.4(a).

WHEREFORE, the complainant prays at the conclusion hereof.

### THE LILLIAN GAMET MATTER

209. On April 8, 2002, Lillian Gamet met and retained the respondent. She paid respondent $1,500. Ms. Gamet had been arrested and charged with driving under the influence of alcohol. Ms. Gamet told the respondent that she thought she had defenses to the allegations. In addition, Ms. Gamet believed that the arresting and booking officers had violated her rights.

210. The respondent told Ms. Gamet that her matter was "a no brainer." He proceeded to talk about himself and to suggest that Ms. Gamet enter into a sexual relationship with him. The respondent and Ms. Gamet talked several more times on the telephone, with the respondent assuring her that she had nothing to worry about. The respondent additionally met Ms. Gamet at her place of business and asked her to hug him.

211. On June 6, 2002, the respondent picked up Ms. Gamet at her home and they traveled to the Jefferson County Courthouse for a pretrial conference. Ms. Gamet had lost her driver's license and the respondent offered to take her to the courthouse. On the way there, the respondent asked Ms. Gamet questions about her case. Ms. Gamet realized that the respondent had done no background work on her case and that he did not know the details of her arrest.

212. When they arrived at court, the respondent privately met with the assistant district attorney assigned to Ms. Gamet's case. The respondent then approached Ms. Gamet and told her that he wanted her to plead guilty. Ms. Gamet objected, stating that she was not guilty and did not wish to plead guilty. They then went into the courtroom and appeared before the court.

213. The respondent told the judge that Ms. Gamet would plead guilty to the charges. The judge asked Ms. Gamet how she pled. Ms. Gamet contends that the respondent elbowed her in the side. Ms. Gamet states that she felt pressured and pled guilty. The judge asked if her plea was coerced or if she was under the influence of medication. Ms. Gamet contends she paused for a long time, her eyes filled with tears, and she answered in the negative. A sentencing hearing was then set for August 22, 2002.

214. On August 8, 2002, the respondent was immediately suspended from the practice of law. The respondent was informed of that fact by telephone shortly thereafter. On August 12, 2002, attorney Kim Ikeler and investigator Karen Bershenyi met with the respondent. Mr. Ikeler informed the respondent of his duty to inform his clients of his suspension.

215. On the evening of August 12, 2002, the respondent called Ms. Gamet and told her that she was to meet him at the courthouse on August 22, 2002 for her sentencing. He told her that she would be fine. He did not inform her that he had been suspended.

216. On August 13, 2002, after doing a search of the respondent's open cases, investigator Karen Bershenyi called Ms. Gamet to inform her that the respondent had been

immediately suspended and could no longer represent her and that she would have to retain new counsel if she had any outstanding issues. Ms. Gamet expressed shock and dismay.

217. On August 22, 2002, Ms. Gamet did not appear at her sentencing due to the fact that she had no counsel and believed that she would be thrown in jail immediately. She received a call from the respondent who stated that he was at the courthouse and told her that she must appear. Ms. Gamet contends that she told the respondent that he was in a lot of trouble and was not supposed to be there. The respondent replied that he was there for her. The respondent did not appear before the court and a warrant was issued for Ms. Gamet's arrest.

### Claim XXII

**(Engaging In Any Other Conduct That Adversely Reflects On The Fitness To Practice Law—Colo. RPC 8.4(h); Conflict Of Interest–Colo. RPC 1.7(b))**

218. Paragraphs 209 through 217 are incorporated herein as if fully set forth.

219. Colo. RPC 8.4(h) provides it is professional misconduct for a lawyer to engage in any other conduct that adversely reflects on the lawyer's fitness to practice law.

220. Colo. RPC 1.7(b) provides a lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to a another client or to a third person, or by the lawyer's own interests, unless: (1) the lawyer reasonably believes the representation will not be adversely affected; and (2) the client consents after consultation.

221. Respondent violated these rules by propositioning Ms. Gamet for sex and by suggesting that she enter into a sexual relationship with him while he was representing her.

222. The foregoing conduct of the respondent establishes grounds for discipline as provided in C.R.C.P. 251.5, and also violates Colo. RPC 8.4(h) and 1.7(b).

WHEREFORE, the complainant prays at the conclusion hereof.

### Claim XXIII

**(A Lawyer Shall Provide Competent Representation To A Client– Colo. RPC 1.1)**

223. Paragraphs 209 through 217 are incorporated herein as if fully set forth.

224. Colo. RPC 1.1 requires that a lawyer provide competent representation to a client, and that competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

225. Respondent failed to provide Ms. Gamet competent legal representation by inadequately advising Ms. Gamet with regard to her defenses to the charges against her. Respondent also failed to investigate Ms. Gamet's case in order to be reasonably prepared for the pre-trial conference. Each of these failures by the respondent constitutes a separate incident of failure to provide competent legal representation, as do all of them together.

226. Respondent knew or should have known that he was failing to provide competent legal representation to Ms. Gamet, but made no effort to remedy the situation.

227. The respondent's failure to provide competent legal representation to the client caused serious injury to her, in that she entered a plea of guilty without having competent advice available to her.

228. The foregoing conduct of the respondent in failing to provide competent legal representation to Ms. Gamet establishes grounds for discipline as provided in C.R.C.P. 251.5 and also violates Colo. RPC 1.1.

WHEREFORE, the complainant prays at the conclusion hereof.

### Claim XXIV

**(A Lawyer Shall Not Engage In Conduct Involving Dishonesty, Fraud, Deceit Or Misrepresentation–Colo. RPC 8.4(c))**

229. Paragraphs 209 through 217 are incorporated herein as if fully set forth.

230. Colo. RPC 8.4(c) provides that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

231. Respondent violated this rule by taking $1,500 from Ms. Gamet and doing little or no work.

232. Respondent knew that he was authorized to pay himself from the $1,500 retainer given to him by Ms. Gamet only after respondent had performed an appropriate amount of work on the case. Knowing that he was not authorized to take Ms. Gamet's money without doing work, respondent nonetheless did so.

233. Respondent's deceit caused injury to Ms. Gamet because he took $1,500 from her, and because he delayed and interfered with her obtaining competent and diligent counsel.

234. The foregoing conduct of the respondent establishes grounds for discipline as provided for and in C.R.C.P. 251.5 and violates Colo. RPC 8.4(c).

WHEREFORE, the complainant prays at the conclusion hereof.

### Claim XXV

### (A Lawyer Shall Not Knowingly Disobey An Obligation Under The Rules Of A Tribunal–Colo. RPC 3.4(c))

235. Paragraphs 209 through 217 are incorporated herein as if fully set forth.

236. Colo. RPC 3.4(c) provides that a lawyer shall not knowingly disobey an obligation under the rules of tribunal.

237. Respondent knowingly disobeyed this rule by endeavoring to continue to represent Ms. Gamet after respondent had been immediately suspended from the practice of law, and after the respondent knew of such suspension. Respondent told Ms. Gamet to meet him at the courthouse, where he intended to enter his appearance as her counsel. It was only because Ms. Gamet was alerted to respondent's suspension and refused his services that respondent did not further violate his immediate suspension.

238. The foregoing conduct of the respondent establishes grounds for discipline as provided in C.R.C.P. 251.5, and also violates Colo. RPC 3.4(c).

WHEREFORE, the complainant prays at the conclusion hereof.

### THE MICHELLE ABUNDIS MATTER

239. On December 4, 2001, Michelle Abundis and her husband Salvador met with the respondent and retained him to handle a child support matter for them. Mr. Abundis had received a letter from California Child Support Services alleging that he owed child support for a child he allegedly had fathered. The Abundis family told the respondent that they wanted a paternity test to be done. The respondent advised them that he would take care of it and Mr. Abundis would not have to travel to California. Michelle Abundis wrote the respondent a $500 check as a retainer. The respondent stated that he would call within two weeks.

240. The respondent never contacted the Abundises again despite the fact that they have made numerous attempts to contact him. They believe that the respondent did nothing with regard to Mr. Abundis' case.

### Claim XXVI

### (A Lawyer Shall Not Engage In Conduct Involving Dishonesty, Fraud, Deceit Or Misrepresentation–Colo. RPC 8.4(c))

241. Paragraphs 239 through 240 are incorporated herein as if fully set forth.

242. Colo. RPC 8.4(c) provides that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

243. Respondent violated this rule by taking $500 from Ms. Abundis and doing little or no work. Respondent knew he was not authorized to pay himself from Ms. Abundis' $500 retainer until he had performed sufficient services to merit his being paid. Knowing that he was not authorized to take any of Ms. Abundis' money for himself without performing work, respondent nonetheless did so.

244. Respondent's deceit caused injury to Ms. Abundis because he took $500 from her

and because he delayed and interfered with her obtaining competent and diligent counsel.

245. The foregoing conduct of the respondent establishes grounds for discipline as provided for and in C.R.C.P. 251.5 and violates Colo. RPC 8.4(c).

WHEREFORE, the complainant prays at the conclusion hereof.

## Claim XXVII

**[Upon Termination, A Lawyer Shall Take Steps to Protect A Client's Interest And Surrender Papers And Property To The Client–Colo. RPC 1.16(d) ]**

246. Paragraphs 239 through 240 are incorporated herein as if fully set forth.

247. Colo. RPC 1.16(d) provides that upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned.

248. Respondent violated this rule by failing to take action to resolve the Abundis family's child support matter, including by failing to respond to the letter from California Child Support Services and by failing to arrange to have a paternity test done. Respondent also failed to respond to calls from Ms. Abundis and her husband over a period of months, at the end of which Ms. Abundis and her husband learned that respondent's phone had been disconnected. Respondent gave Ms. Abundis no notice that he was terminating the attorney-client relationship. Respondent also failed to return to Ms. Abundis the $500 which she had given him as a retainer.

249. Respondent knew or should have known that he was failing to protect his client's interests by not communicating with her, by not working on her case, and by closing his office and disconnecting his telephone without notice to her and without returning her retainer.

250. Respondent caused injury or potential injury to Ms. Abundis, including by delaying the resolution of the child support matter and by delaying her obtaining competent and diligent counsel to succeed him.

251. The foregoing conduct of the respondent establishes grounds for discipline as provided for and in C.R.C.P. 251.5 and violates Colo. RPC 1.16(d).

WHEREFORE, the complainant prays at the conclusion hereof.

## Claim XXVIII

**(A Lawyer Shall Act With Reasonable Diligence And Promptness In Representing A Client, And That A Lawyer Shall Not Neglect A Legal Matter Entrusted To That Lawyer–Colo. RPC 1.3)**

252. Paragraphs 239 through 240 are incorporated herein as if fully set forth.

253. Colo. RPC 1.3 provides that a lawyer shall act with reasonable diligence and promptness in representing a client, and that a lawyer shall not neglect a legal matter entrusted to that lawyer.

254. Respondent violated this rule by failing to arrange a paternity test for Mr. Abundis, by failing to respond to the California Child Support Service's letter to Mr. Abundis, and by failing to perform other work on the case.

255. Respondent caused injury or potentially injury to Ms. Abundis, including by delaying the resolution of the child support matter and by delaying her obtaining competent and diligent counsel to succeed him.

256. The foregoing conduct of the respondent establishes grounds for discipline as provided in C.R.C.P. 251.5, and also violates Colo. RPC 1.3.

WHEREFORE, the complainant prays at the conclusion hereof.

## Claim XXIX

**A Lawyer Shall Keep A Client Reasonably Informed About The Status Of A Matter and Promptly Comply With Reasonable Requests For Information–Colo. RPC 1.4(a)**

257. Paragraphs 239 through 240 are incorporated herein as if fully set forth.

258. Colo. RPC 1.4(a) provides that a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

259. Respondent violated this rule by failing to call Ms. Abundis over a period of many months, despite his promise to do so. Respondent also failed to return Ms. Abundis' numerous calls to him.

260. Respondent caused injury or potential injury to Ms. Abundis, including by delaying the resolution of the child support matter and by delaying her obtaining competent and diligent counsel to succeed him.

261. The foregoing conduct of the respondent establishes grounds for discipline as provided in C.R.C.P. 251.5, and also violates Colo. RPC 1.3.

WHEREFORE, the complainant prays at the conclusion hereof.

## RESPONDENT'S AFFAIR WITH A CLIENT

262. Charlene Walker is a former employee of respondent. She worked for him as his assistant from February through April 2002. During that time she fielded calls from clients and opposing counsel and handled other secretarial tasks in respondent's criminal law and family law practice.

263. In the weeks after Ms. Walker began her employment, respondent did not want to talk to anyone except a handful of clients. He had met a new client, Katia Thomas, and was now representing her and sleeping with her.[5] He put off attorneys who called trying to discuss cases; he wouldn't do "paperwork" on the cases.

264. Instead, respondent would constantly talk about his girlfriend. She was young, from Brazil and had an 18 month old child. If she called or came by, he would drop everything. Ms. Thomas needed legal help with her divorce and with immigration problems. However, respondent never seemed to

find the time to work on her case; he just rescheduled meetings and phone calls. Instead of working for her, he preferred taking her out on dates. He also took a vacation with her.

## V. *Claim XXX*

(Engaging In Any Other Conduct That Adversely Reflects On The Fitness To Practice Law—Colo. RPC 8.4(h); Conflict Of Interest–Colo. RPC 1.7(b))

265. Paragraphs 262 through 264 are incorporated herein as if fully set forth.

266. Colo. RPC 8.4(h) provides it is professional misconduct for a lawyer to engage in any other conduct that adversely reflects on the lawyer's fitness to practice law.

267. Colo. RPC 1.7(b) provides that a lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to a another client or to a third person, or by the lawyer's own interests, unless: (1) the lawyer reasonably believes the representation will not be adversely affected; and (2) the client consents after consultation.

268. Respondent violated these rules by engaging in a sexual relationship with a client, Katia Thomas, a young and vulnerable immigrant,.

269. The foregoing conduct of the respondent establishes grounds for discipline as provided in C.R.C.P. 251.5, and also violates Colo. RPC 8.4(h) and 1.7(b).

WHEREFORE, the complainant prays at the conclusion hereof.

## RESPONDENT'S FAILURE TO COOPERATE WITH THE INVESTIGATION

270. The Office of Attorney Regulation Counsel ("OARC") made numerous efforts to notify respondent of the above-referenced requests for investigation and to obtain his responses. Although at one point respondent told OARC's investigators he was hiring

---

5. Respondent also told another of his clients, Sheree Brackeen (discussed above) that he was sleeping with Ms. Thomas.

counsel, he did not do so and did not otherwise participate in the process.

271. As a result, undersigned counsel prepared and filed a Petition for Immediate Suspension, which was granted on August 6, 2002. Respondent failed to fulfill the requirements of Rule 251.28 for action after a suspension, including filing an affidavit with the Colorado Supreme Court. This despite two written reminders to do so.

272. Respondent left for OARC's investigators the task of contacting his former clients and returning to them what remained of respondent's files. Respondent left some of these with a former employer (who brought them to OARC) and some in an apartment he vacated (Investigator Bershenyi had to collect these). It took OARC's investigators a number of weeks and substantial time to contact these persons and return files to those who requested them.

273. Respondent moved from one address to the next, making it hard to send notices to him. Eventually, he dropped out of sight. In a last effort to locate him, Investigator Bershenyi tracked down respondent's mother in Arizona. OARC's investigators called her and she provided a Denver address. Copies of all the requests for investigation were sent to that address. Respondent did not reply.

### Claim XXXI

**(An Attorney Shall Respond To A Request By The Regulation Counsel For Information Necessary To Carry Out The Performance Of Regulation Counsel's Duty–C.R.C.P. 251.5(d); A Lawyer Shall Not Knowingly Fail To Respond Reasonably To A Lawful Demand For Information From A Disciplinary Authority–Colo. RPC 8.1(b))**

274. Paragraphs 270 through 273 are incorporated herein as if fully set forth.

275. C.R.C.P. 251.5(d) requires that an attorney respond to a request by the Attorney Regulation Counsel for information to carry out the performance of its duties.

276. Respondent knew that investigations were proceeding, including because respondent met with undersigned counsel and an investigator to discuss the transfer of respondent's files to his client or successor counsel. Respondent said he was retaining counsel (although he did not do so). However, respondent failed to respond to repeated attempts by the Office of Attorney Regulation Counsel to obtain information from the respondent, including numerous mailings by certified and regular mail.

277. The respondent knew or should have known that he was failing to cooperate and respond to the requests by Attorney Regulation Counsel.

278. The foregoing conduct of the respondent in failing to respond to requests of Attorney Regulation Counsel establishes grounds for discipline as provided in C.R.C.P. 251.5.

279. Colo. RPC 8.1(b) provides that a lawyer in connection with a disciplinary matter shall not knowingly fail to respond reasonably to a lawful demand for information from a disciplinary authority, except if the information is protected by Colo. RPC 1.6 or there is a good faith challenge to the demand.

280. Respondent knowingly violated the rule by failing to respond to the demands for information made by Attorney Regulation Counsel during the investigation of the subject matters of this disciplinary proceeding, despite respondent's knowledge that OARC was investigating him.

281. The information sought did not require disclosure of confidential information otherwise protected by Colo. RPC 1.6.

282. The respondent made no good faith challenge to the demand by Attorney Regulation Counsel for such information; in fact, the respondent failed to participate at all in the investigation, and was suspended for so doing.

283. The foregoing conduct of the respondent in failing to respond to requests for information of regulation counsel establishes grounds for discipline as provided in C.R.C.P. 251.5, and violates Colo. RPC 8.1(b).

WHEREFORE, the complainant prays at the conclusion hereof.

## VI.  *Claim XXXII*

**(A Lawyer Shall Not Knowingly Disobey
An Obligation Under The Rules Of
A Tribunal–Colo.  RPC 3.4(c))**

284.  Paragraphs 270 through 273 are incorporated herein as if fully set forth.

285.  Colo. RPC 3.4(c) provides that a lawyer shall not knowingly disobey an obligation under the rules of a tribunal.

286.  The respondent knowingly disobeyed this rule by failing to comply with C.R.C.P. 251.28, including by failing to file the required affidavit with the Colorado Supreme Court following a suspension.

287.  The foregoing conduct of the respondent establishes grounds for discipline as provided in C.R.C.P. 251.5, and also violates Colo. RPC 3.4(c).

WHEREFORE, the people pray that the respondent be found to have engaged in misconduct under C.R.C.P. 251.5 and the Colorado Rules of Professional Conduct as specified above;  that the respondent be appropriately disciplined for such misconduct;  that the respondent be required to refund fees to the clients, and/or the client protection fund pursuant to C.R.C.P. 252.14(b);  and that the respondent be assessed the costs of this proceeding.

**The PEOPLE of the State of
Colorado, Complainant,**